# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MICHELE L. CASTANEDA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 11 C 5105 |
| v. | ) | |
| | ) | Magistrate Judge |
| CAROLYN W. COLVIN,[1] | ) | Maria Valdez |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying plaintiff Michele Castaneda's claim for Supplemental Security Income and Disability Insurance benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Castaneda's motion for summary judgment [Doc. No. 20] is granted in part and denied in part. The Government's motion for summary judgment [Doc. No. 30] is denied. The Court finds that this matter should be remanded to the Commissioner of Social Security for further proceedings.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as defendant in this suit.

## BACKGROUND

## I.     PROCEDURAL HISTORY

Castaneda originally applied for Title II Disability Insurance benefits on November 30, 2011, and for Title XVI Supplemental Security Income on January 3, 2006. (R. 80–81.) Castaneda alleged disability beginning March 31, 2004 due to diabetes and mental impairments of depression and anxiety. (R. 84, 207.)[2] The application was initially denied on April 14, 2006, and upon reconsideration on June 27, 2006 (R. 80–84.) Castaneda timely filed a request August 7, 2006 for a hearing before an Administrative Law Judge ("ALJ"). (R. 100.) At the hearing on October 23, 2008, Castaneda personally appeared and testified and was represented by counsel. (R. 39.) A vocational expert ("VE") also testified. (*Id*.)

On February 2, 2009, the ALJ issued a decision denying Castaneda's claim for benefits, finding her not disabled under the Social Security Act. (R. 25-36.) The Social Security Administration Appeals Council denied Castaneda's request for review on June 22, 2011, (R. 1,) leaving the ALJ's decision as the final decision of the Commissioner and therefore reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

---

[2] Castaneda's original applications for benefits appear to have been omitted from the record submitted to the Court.

## II.   FACTUAL BACKGROUND

### A.   <u>Claimant's History</u>

Castaneda was born on May 5, 1976. (R. 40.) She completed the eighth grade, but never attended high school or received a GED. (R. 41.) Castaneda lives with her parents and her two children, ages seven and four. (R. 40–41.) Castaneda worked steadily as a restaurant employee and in retail from 1992 to 2004, except for one three month gap between November, 2002 and March, 2003. (R. 168.)

In her interview with the disability field office, Castaneda reported that she cannot drive due to her diabetes, and therefore cannot work. (R. 152.) She initially stopped working due to hospitalizations which resulted in excessive absences. (*Id*.) In her most recent job, Castaneda frequently lifted 10-25 pounds. (R. 154.) In a separate questionnaire submitted in support of her disability claim, Castaneda reported that nausea and vomiting make tasks like preparing meals and reading difficult. (R. 188.) She struggles with opening lids and carrying groceries due to weakness in her arms. (*Id*.) Castaneda occasionally suffers from cramping and tingling in her fingers, resulting in difficulties with dialing telephones, picking up small objects, or writing. (*Id*.) She estimates that she can sit for half an hour at a time and cannot sit for two hours without vomiting and needing to lie down. (R. 189.) She cannot stand long enough to make meals requiring more time than simple foods and usually avoids shopping due to pain. (*Id*.) She estimates that she needs 12-20 rest periods lasting 20 minutes each during the day. (*Id*.)

### B. Testimony and Medical Evidence

#### 1. Castaneda's Testimony

Castaneda testified before the ALJ that she is not currently working and has not worked since the date that she initially claimed disability. (R. 42.) She cannot work due to complications associated with her insulin dependant diabetes and her anxiety attacks. (R. 42–43.) Her anxiety attacks exacerbate difficulties associated with her diabetes and cause her to breathe heavily, experience stomach pain, and vomit. (R. 43, 45.) She has a panic attack or disorientation due to low blood sugar two to three times a week. (R. 44.)

Castaneda testified that she is not able to drive when she takes her daily medication for depression and anxiety. (R. 49.) She takes additional medications during panic attacks. (R. 50.) Events with varying intensities cause Castaneda to have panic attacks. (R. 51–52.) She typically responds to these by sitting in a cool, quiet area until they subside. (R. 51.) Castaneda struggles with concentration due to depression. (R. 55.)

Castaneda testified that, as a result of her diabetes, she cannot stand for more than an hour at a time. (R. 52.) She previously suffered from neuropathy in her legs and feet, which has improved to the point that she now only experiences numbness in her calves and legs and in her left hand. (*Id*.) Castaneda suffers from blurred vision and sees spots in her right eye during diabetic episodes due to an accident she suffered six months prior to the hearing. (R. 68.) She has been told by doctors that she should stand up and move at least every twenty minutes in order to

avoid experiencing numbness in her legs. (R. 53.) Castaneda also requires two lunch breaks and four additional breaks through the normal work day to check her blood sugar and take insulin. (R. 56.)

Castaneda is able to care for herself and for her children, although she receives help from her parents with childcare. (R. 57.) She cleans her own sleeping area and her mother typically cleans the rest of their home. (*Id*.) She does her own laundry but does not fold it. (R. 57–58.) She is able to prepare simple meals and shop for groceries. (*Id*.)

Castaneda testified that she has no close friends outside of her family. (R. 59.) She attends church regularly, but does not belong to any social groups or other organizations. (R. 60.) She is able to drive to drop her children off and pick them up from school and to attend her daughter's extracurricular activities. (*Id*.) Castaneda stated that she does not use alcohol or drugs. (*Id*.)

### 2.    Medical evidence

#### a.    Hospital visits

The record indicates that, beginning in 2005, Castaneda made frequent visits to the hospital due to complications with her gastroparesis and diabetes. (R. 1789.) On July 28, 2005, Castaneda visited St. Francis Hospital with back pain and abdominal pain. (*Id*.) The hospital administered pain medication, a Duragesic patch and Neurontin (for neuropathy), and Castaneda received her regular home insulin dosage. (*Id*.) She was discharged a day later (*Id*.) Castaneda returned to St. Francis

on August 19, 2005 complaining of side pain in her abdomen. (R. 1791.) The report notes that Castaneda has gastroparesis. (*Id*.) Castaneda checked out of the hospital on August 20, 2005 against medical advice and before further testing could be done. (*Id*.) A similar event occurred two weeks later, when Castaneda was admitted to the hospital with diabetes complications. (R. 1792.) The record also notes major depression, anxiety, and chronic abdominal and back pain. (*Id*.) Castaneda left the hospital against medical advice. (*Id*.) Castaneda had a similar visit on September 27, 2005, receiving treatment for her diabetes, diabetic ketoacidosis, and depression, but leaving against medical advice. (R. 1793.)

Castaneda made intermittent visits to the hospital with complaints associated with her diabetes, stomach and back pain, depression, and anxiety between 2005 and 2007. (R. 1786, 1799.) Reports from her hospital visits note that Castaneda suffers from diabetic ketoacidosis. (R. 1664, 1786.) Ultimately, the pain in Castaneda's lower abdomen led to gallbladder removal (R. 952.) Castaneda also experienced diabetic neuropathy. (R. 1035.) During her visits to the hospital, Castaneda frequently requested Dilaudid for pain. (R.1504.)

### b. Treating physicians

In 2004 and 2005, Dr. Romi Sethi saw Castaneda for problems associated with her diabetes and gastroparesis and for complaints of upper abdominal pain. (R. 235–36.)  Dr. Sethi treated Castaneda once in 2001, but had not seen her since. (R. 233.) Dr. Sethi noted Castaneda's dependance on pain medications and that those were possible reasons for hospital visits. (R. 1735–37.) On February 16, 2006, Dr.

Sethi saw Castaneda for another appointment, stating that she exhibited "poor compliance" with her diabetes regimen, resulting in frequent admissions to hospitals. (R. 1738.) Dr. Sethi discussed improving compliance with her treatment plan for diabetes during this visit. (*Id.*) Dr. Sethi had two more appointments with Castaneda in 2007. (R. 1828–31.) On May 3, 2007, Dr. Sethi stated that she had poor adherence to her medications and also noted a detached retina. (R. 1829.) On July 3, 2007, Castaneda was suffering from nausea and vomiting. (R. 1830.) Dr. Sethi also noted moderate to severe gastropathy, frequent upper abdominal pain, and frequent need for narcotics to provide pain relief. (*Id.*)

On May 7, 2007, Dr. Sethi filled out a Residual Functional Capacity Questionnaire for Castaneda. (R. 1799–1804.) Dr. Sethi opined that Castaneda's prognosis was "fair to good." (R. 1799.) Dr. Sethi indicated that emotional problems contributed to the severity of Castaneda's symptoms and functional limitations (R. 1800.) Dr. Sethi also noted that Castaneda's symptoms were severe enough to "frequently" interfere with her concentration. (*Id.*) As a result of Castaneda's symptoms, Dr. Sethi opined that she could walk one city block without pain; sit two hours and stand thirty minutes at a time; stand and walk for less than two hours and sit for about four hours during an eight-hour work day; and that Castaneda needed a job that would allow her to shift positions from sitting to standing or walking at will during the day. (R. 1801.) Dr. Sethi indicated that, based on her impairments and treatment, Castaneda would be likely to miss work more than four times a month. (R. 1804.)

Dr. Piyush C. Buch treated Castaneda for her anxiety and for her depression. (R. 1846–49.) On March 19, 2005, Dr. Buch's observed that Castaneda showed a dysphoric affect and diagnosed atypical depression with a Global Assessment of Functioning ("GAF") score of 50. (R. 1509.) Dr. Buch prescribed Paxil for Castaneda's depression. (*Id*.) Dr. Buch saw Castaneda again on June 30, 2005. (R. 1613.) After examination, Dr. Buch diagnosed Castaneda with impulse control disorder and prescribed Abilify. (R. 1613.) Dr. Buch treated Castaneda on July 19, 2007, diagnosing her with panic disorder, and again noting her intractable abdominal pain. (*Id*.) Dr. Buch prescribed Paxil and Xanax. (*Id*.) On November 8, 2007, Dr. Buch again saw Castaneda and prescribed Paxil and Xanax for her psychiatric symptoms. (R. 1486.)

### 3.    Vocational expert's testimony

Pamela Tucker testified as a VE at Castaneda's hearing before the ALJ. Tucker testified that a if Castaneda were able to lift ten to twenty pounds, with a sit/stand option every ninety minutes and given opportunities to check her blood sugar three times every eight-hour workday and eat something three times each day (during the same break), she could perform her past employment as a deli slicer, a cashier, and a salesclerk. (R. 73–75.)  When the ALJ asked Tucker to further constrain Castaneda's hypothetical capabilities to concentration on "entry level, semi-skilled tasks" with standing limited to two hours per eight-hour workday, Tucker responded that she would not be able perform any of her past work. (R. 75–76.)

Tucker testified that in the regional job market, a hypothetical person of Castaneda's age, education, and work experience with the limitations above plus an additional sit/stand option every 90 minutes could perform work as an assembler (4,000 positions), a receptionist (6,000 positions), or a general office clerk (4,000 positions). (R. 76–77.) If the hypothetical person were to miss work or take half days four times a month, Tucker stated that she would be precluded from all work. (R. 77–78.) Tucker further testified that if the hypothetical person needed an unscheduled hour-long break each day no jobs would be available to her. (R. 77.)

### C.   ALJ Decision

The ALJ found that Castaneda had not engaged in substantial gainful activity from her initial onset date of March 31, 2004, through her last insured date of June 30, 2006. (R. 27.) The ALJ also found that Castaneda had several impairments due to diabetes with residual retinopathy and diabetic gastroparesis as a result of her gall bladder surgery and also due to an affective disorder and anxiety. (*Id.*) The ALJ stated that none of the impairments, alone or in combination, met or medically equaled any listed impairments from relevant regulations.

The ALJ next determined that Castaneda had the RFC to perform a limited range of unskilled and sedentary work with accommodations allowing for regular monitoring of blood sugar readings and breaks to eat during the workday. (R.29.) The ALJ found that Castaneda could not sustain the concentration, persistence, and pace necessary to perform highly detailed work, but could concentrate well

enough to perform entry-level semi-skilled work. (*Id.*) The ALJ then recited medical history and test results, focusing heavily on Castaneda's "drug seeking behavior" and non-compliance with her suggested diet and medications (R. 29–32.)

## **DISCUSSION**

### I. **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4) (2008).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir.1992). A negative answer at any step, other than at step 3, precludes a finding of disability. Id. The claimant bears the burden of proof at steps 1–4. *Id.*

Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.    JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863 , 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its own judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841.

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an

accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ "must at least minimally articulate the analysis for the evidence with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Murphy v. Astrue*, 498 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions, and must adequately articulate his analysis so that we can follow his reasoning.").

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III.    ANALYSIS

Castaneda asserts that the ALJ decision was in error for four reasons: (1) the ALJ selectively credited the opinion of Castaneda's treating physician, Dr. Sethi; (2) the ALJ did not present a supportable basis for her RFC finding; (3) the ALJ failed to properly assess Castaneda's mental limitations; and (4) the ALJ issued a flawed credibility assessment. The Court examines each of Castaneda's claims in turn.

## A.    Treating Physician's Opinion

Castaneda argues that the ALJ's rejections of selected portions of Dr. Sethi's opinion warrants remand. Specifically, Castaneda claims that the ALJ's conclusion that she needed a sit/stand option every ninety minutes was an erroneous confusion of Dr. Sethi's opinion that Castaneda needed a sit/stand option at will in addition to the option of walking for five to six minutes every ninety minutes. Castaneda also argues that remand is required because the ALJ failed to assess Dr. Sethi's opinion that other aspects of Castaneda's condition would interfere with her ability to work. The Commissioner responds that the ALJ assigned reasonable weight to the Dr. Sethi's opinions where they were supported by the record and discounted those opinions which were unsupported.

Opinions from treating physicians are typically given more weight than evidence from other sources because these opinions "provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2). Those opinions are not entitled to controlling weight if they are unsupported by clinical and laboratory diagnostic technique or are inconsistent with other evidence in the record. *Id.* "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of

the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

While the ALJ credited Dr. Sethi's opinion that Castaneda "needs a sit/stand option every 90 minutes for 5-6 minutes," (R. 33,) this was actually a misstatement of Dr. Sethi's findings. In her report, Dr. Sethi indicated that Castaneda needed a job that allowed her to sit or stand at will. (R. 1801.) The ALJ's confusion resulted in a finding that Castaneda could perform sedentary work, and that "the option to sit for ninety minutes and then stand for five minutes would have no impact on any of the jobs identified." (R. 35.) This conclusion was drawn from questioning to the VE about potential limitations that a person who needed the option to sit or stand every 90 minutes at work would experience. The Seventh Circuit has stated that relying on a doctor's opinion which is inconsistent with the ALJ's RFC warrants remand. *See Hamilton v. Colvin*, 525 F. App'x. 433, 438–39 (7th Cir. 2013) (reversing and remanding ALJ decision for erroneously stating treating physician's opinion that claimant needed a sit/stand option every 45 minutes when physician actually stated claimant needed option to stand every 20 minutes). Because the ALJ relied on a mistaken statement of a treating physician's opinion in questioning the VE and creating an RFC finding, remand is appropriate.

The ALJ's rejection of Dr. Sethi's opinion that Castaneda would be absent from work four times a month was also in error. In concluding that Castaneda would not have problems with excessive absenteeism, the ALJ stated that Dr.

Sethi's opinion to the contrary was not "based on or supported by Dr. Sethi's own minimal objective findings or [her] treatment notes" and that the described absenteeism was also not supported by other evidence in the record. (R. 33.) The ALJ's conclusion is remandable error for two reasons. First, the ALJ did not identify what evidence she relied on in rejecting the treating physician's opinion. *See Moss*, 555 F.3d at 561 (requiring detailed discussion of reasons for rejecting treating physician's opinions); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("An ALJ who chooses to reject a treating physician's opinion must provide a sound explanation for the rejection."). Second, the record plainly supports Dr. Sethi's opinions, given ample evidence of Castaneda's frequent hospital visits. In Dr. Buch's assessment of Castaneda on August 21, 2007 he noted "50 hospitalizations for this year for pain." (R. 1848.) Other medical evidence in the record also cites "multiple hospitalizations," (R. 1818,) and "frequent admissions," (R. 1796,) between 2005 and 2007. By ignoring this contrary evidence, the ALJ failed to build an adequate and logical bridge between the record and her conclusion that Dr. Sethi's opinion that Castaneda would miss work more than four times a month was unsupported.[3]

---

[3] Castaneda also asserts that the ALJ erred in rejecting Dr. Sethi's opinion that Castaneda required unscheduled work breaks. The ALJ's decision to give that opinion limited weight due to lack of support in the record was not error.

On remand, the ALJ should resolve the discrepancies between her RFC finding and Dr. Sethi's opinion. Where the ALJ gives limited weight to Dr. Sethi's opinions, the reasons for doing so must be articulated based on evidentiary support from the record. The ALJ should also discuss relevant evidence supporting her own RFC assessment where it deviates from evidence discussed by the treating physician.

### B.   <u>Residual Functional Capacity Finding</u>

Castaneda next argues that the ALJ erred in her RFC finding by failing to set forth a justification from the record for the conclusion that Castaneda could perform sedentary work on a continuous basis. The ALJ specifically rejected some evidence that would have stood in as rationale for an RFC and Castaneda asserts the ALJ never pointed to other evidence necessary to fill in the gaps left by rejections. The Commissioner responds that the ALJ found a portion of Dr. Sethi's opinions to be supported and also considered the opinion of the State agency consultant.

This Court has already determined that, with respect to Dr. Sethi's opinion, the ALJ did not adequately explain her reasoning in reaching an RFC. "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In this case, the ALJ did not substantiate her RFC assessment with evidence showing that Castaneda would be able to consistently be

at work, nor did she establish that breaks necessary to accommodate Castaneda's diabetes would not hinder her ability to work. Where the ALJ does not establish a basis in the record for her conclusions, remand is warranted. *See Barrett v. Barnhart*, 355 F.3d 1065, 1066–67 (7th Cir. 2004) (finding error where ALJ determined claimant could stand for two hours because there was no medical evidence to support that conclusion).

On remand, the ALJ should base any RFC findings on available record evidence. In the event that treating physicians' opinions are given less than controlling weight, other evidence should be provided in their place.

### C.    Castaneda's Mental Limitations

Castaneda asserts that the ALJ erred by issuing findings regarding mental limitations without acquiring additional information from medical professionals. Castaneda also argues that the ALJ erroneously drew conclusions about her limitations in concentration, persistence, and pace without providing a basis from the record beyond Castaneda's ability to care for her children. The Commissioner responds that the ALJ's findings are supported by substantial evidence in the record.

As with other functional capacity findings, the ALJ must build a logical bridge between the evidence in the record and her conclusions regarding a claimant's ability to work despite mental limitations. *See Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (restating 20 C.F.R. § 404.1545(c)'s requirement that RFCs take into account and explain bases for conclusions regarding mental limitations

17

that "may reduce [a claimant's] ability to do past work and other work"). Here, the ALJ stated that there was some support for Castaneda's mental impairments, based on evidence received from a treating psychiatrist — whom the ALJ did not identify by name — and that Castaneda could not perform highly detailed work tasks, although she could perform entry-level tasks. However, the ALJ, did not explain how she reached this conclusion, failing to cite any evidence in support of her assessment of Castaneda's limitations. This lack of support for an ALJ's finding was error. *See Richards v. Astrue*, 370 F. App'x. 727, 731 (7th Cir. 2010) ("[W]ithout any medical professional having rated Richards's [mental limitations], the ALJ assigned a rating of 'mild' in each category. In the absence of any expert foundation for these ratings, we cannot discern the necessary logical bridge from the evidence to the ALJ's conclusions.").

The ALJ's errors were compounded by the her failure to consider the GAF score of 50 assigned to Castaneda by Dr. Buch. This score was an important indicator of Castaneda's mental capacity as it provides a "measure[] of both severity of symptoms and functional level." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citations omitted); *see also Punzio v. Astrue*, 630 F.3d 704, 711 (7th Cir. 2011) (noting the usefulness of GAF scores in assessing mental limitations). As a result of this omission, the ALJ did not properly consider the evidence before her in concluding that Castaneda could perform entry-level work tasks, warranting remand.

Although the ALJ pointed to a few pieces of evidence mitigating the seriousness of Castaneda's mental limitations, including a statement that her condition was improving — reported by Castaneda and erroneously attributed to the Dr. Buch — the evidence does not sufficiently support the ALJ's ultimate conclusion. Instead, it appears to have been "cherry-picked" and is therefore unhelpful. *See Punzio*, F.3d at 710 (describing inherent problems with mental health evidence drawn from a single moment, due to the fact that "good days" by a claimant may not reflect their actual mental limitations).

On remand, the ALJ should explicitly consider treatment notes from Dr. Buch, as well as other evidence relevant to mental limitations which appears in the record. The ALJ should also state a basis in the record for her conclusions regarding Castaneda's ability to perform entry-level work. In the event that such necessary evidence is lacking, the ALJ should consult with treating physicians in order to adequately substantiate her findings.

### D.    Credibility Assessment

Castaneda's final argument is that the ALJ committed multiple errors in her credibility assessment. Castaneda claims that the ALJ improperly relied on her non-compliance with recommended medical regimens and on her drug-seeking behavior in finding Castaneda not credible. Castaneda also asserts that the finding that her testimony was not "fully credible," (R. 33,) was an error. The Commissioner responds that the ALJ's credibility determination is entitled to deference and that reliance on non-compliance and drug-seeking behaviors was warranted.

A reviewing court "will not disturb [an ALJ's] credibility determination as long as they find some support in the record." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1178–79 (7th Cir. 2001)). For this reason, an ALJ's credibility determination should only be reversed if it is "patently wrong." *Id.*

In this case, the ALJ's credibility determination was reasonably reflected in the record and does not alone warrant remand. While Castaneda objects to the ALJ's failure to take into account explanations for her non-compliance, Castaneda did not offer an explanation for not following orders from doctors during her testimony, nor do explanations appear in the record. Where a claimant offers no explanation for her non-compliance, the ALJ is not obligated to explore conjectural explanations. *See Castro v. Astrue*, No. 09 C 7088, 2012 WL 707149, at *5 (N.D. Ill. Mar. 5, 2012 ("[W]hile an ALJ may not draw any adverse inferences from a lack of care without considering the claimant's explanations for the failure . . . Castro has offered no explanation at all.")

Castaneda also disputes the ALJ's emphasis on her reported drug seeking behavior in reaching a credibility determination. The Commissioner is correct that the framework set out in 20 C.F.R. §§ 404.1535, 416.935 only requires an analysis of whether drug addiction is a contributing factor material to the determination of disability where a claimant has been determined to be disabled. Because the ALJ did not find Castaneda was disabled, such an analysis was unnecessary.

The ALJ also properly considered the objective medical evidence before her in assessing Castaneda's credibility with regard to pain. Specifically, the ALJ mentioned episodes of pain experienced by Castaneda, but weighed them against multiple hospital reports in the record indicating that doctors could not identify a source for Castaneda's pain. *See Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) (finding that it was not unreasonable for ALJ to conclude that claimant exaggerated impact of impairments where discrepancies existed between claimant's testimony and medical records).

The ALJ's description of Castaneda's testimony as not "fully credible" has been described by the Seventh Circuit as "meaningless boilerplate," *see Parker v. Astrue*, 597 F.3d 920, 921–22 (7th Cir. 2010), due to its failure to sufficiently separate credible testimony from non-credible testimony. *See Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010) (stating that ALJ's finding that claimant's testimony was "not entirely credible" failed to "indicate which statements were not credible and what exactly 'not entirely' is meant to signify"). While not warranting remand on its own, *Richison v. Astrue*, 462 F. App'x 622, 625 (7th Cir. 2012), this language should be revised on remand for other reasons to better reflect the specific aspects of Castaneda's testimony which are credible and those which are not, with evidence from the record supporting the findings.

## CONCLUSION

For the foregoing reasons, Plaintiff Michele Castaneda's motion for summary judgment [Doc. No. 19] is granted in part and denied in part. The Government's motion for summary judgment [Doc. No. 30] is denied. The Court finds that this matter should be remanded to the Commissioner of Social Security for further proceedings consistent with this order.

**SO ORDERED.**         **ENTERED:**

**DATE:**   <u>**March 17, 2014**</u>      _____

        **HON. MARIA VALDEZ**

        **United States Magistrate Judge**